375 A.2d 405.

GERALD BAKER *et al. vs.* WILLIAM E. LAURIE, JR., *Warden*

JULY 7, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This is a habeas corpus proceeding in which the petitioners challenge their detention under rendition warrants issued on November 18, 1976 by the Governor of Rhode Island upon the request of the Governor of Massachusetts.

The documents submitted by the Commonwealth of Massachusetts in support of its rendition request set out that petitioners were charged with the crime of murder in Massachusetts. The charge was made by a complaint based upon the sworn affidavit of a Massachusetts police officer.

The petitioners were brought before a justice of the Third Division of the District Court and advised of their right to test the legality of their extradition by a writ of habeas corpus. Subsequently, a habeas petition was filed in the Superior Court, and on December 9, 1976, petitioners were afforded an evidentiary hearing on the petition in Superior Court.

At the hearing, the State introduced the rendition documents and Governor's warrants into evidence. The Massachusetts police officer's affidavit stated that confessions of the petitioners had been obtained by Lieutenant Frank A. Ricci of the police department of Warwick, Rhode Island on October 19, 1976. The affidavit also stated that fingerprints of one of the petitioners were found on a car allegedly stolen by the perpetrators at the scene of the crime and abandoned in Warwick, Rhode Island.

At the habeas hearing the State also presented testimony by Lieutenant Ricci, the Warwick police officer to whom petitioners allegedly confessed. He testified that petitioners had told him they were in Massachusetts at the time of the crime. He said that their statements were made after they had received *Miranda* warnings and that the statements were not induced by promises or threats by the police. State objections to petitioners' attempts to cross-examine Lieutenant Ricci as to the voluntariness of the confessions were sustained on the ground that violations of constitutional rights related to the ultimate guilt or innocence of petitioners and thus must be left for trial in the demanding state. The petitioners produced two alibi witnesses who testified that petitioners were in Rhode Island at the time when the crime allegedly occurred in Massachusetts.

The trial justice found that the rendition warrants were regular on their face and that petitioners therefore had the burden of rebutting the State's prima facie case with

conclusive evidence that they were not in the demanding state. He concluded that this burden had not been met and denied their petition for habeas corpus. The petitioners thereupon initiated habeas corpus proceedings in this court.

The petitioners contend that the failure to accord them an opportunity to cross-examine the Rhode Island police officer to whom the confessions were allegedly made as to their voluntariness was a denial of due process. We agree.

Extradition is mandated by article IV, section 2 of the United States Constitution which reads in pertinent part:

> "A person charged in any state with treason, felony or other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

It is the constitutional duty of an asylum state to enforce the Constitution's interstate rendition clause faithfully. *Brown* v. *Sharkey*, 106 R.I. 714, 716, 263 A.2d 104, 106 (1970). The Uniform Criminal Extradition Act, adopted by Rhode Island in 1947 as G.L. 1956, ch. 9 of title 12, implements the constitutional requirements of article IV and sets forth procedures to be followed in this area of the law. *Id.* at 717, 263 A.2d at 106.

Under §12-9-12, an alleged fugitive may test the validity of his or her arrest by applying for a writ of habeas corpus.

> "The court when considering the habeas petition is limited to an inquiry as to whether the petitioner is charged with a crime in the demanding state; whether the petitioner is in fact the person charged with this crime; whether the petitioner was in the demanding state at the time of the crime, left, and was found in the asylum state; and whether the requisition papers are in order." *Id.* at 718, 263 A.2d at 107.

The court may not concern itself with the question of

petitioners' ultimate guilt or innocence of the charge. *South Carolina* v. *Bailey,* 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); *Brown* v. *Sharkey, supra.* Nor may petitioners raise issues concerning their rights to exclude evidence obtained by unconstitutional methods. *United States ex rel. Vitiello* v. *Flood,* 374 F.2d 554 (2d Cir. 1967). Such issues are properly left for determination at the trial in the demanding state.

However, petitioners were entitled to an opportunity to prove by clear and convincing evidence that they were not fugitives from justice, i.e., that they were not in the demanding state at the time the crime was committed. *Munsey* v. *Clough,* 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905); *Brown* v. *Sharkey, supra.* The petitioners could not be barred from attempting such proof merely because in the attempt they might introduce evidence which also related to issues properly left for the trial on the merits in the demanding state. *Ross* v. *Hegstrom,* 157 Conn. 403, 412, 254 A.2d 556, 561 (1969).

Since the rendition warrants in the instant case were facially valid, they raised a presumption that petitioners were in the demanding state at the time of the crime. *People ex rel. McNichols* v. *Pease,* 207 U.S. 100, 109, 28 S.Ct. 58, 61, 52 L.Ed. 121, 125 (1907); *Brown* v. *Sharkey, supra* at 718, 263 A.2d at 107. The petitioners attempted to rebut this presumption by establishing through cross-examination of the Rhode Island police officer to whom they allegedly confessed that their statements were involuntary, as well as by introducing alibi testimony.[1]

---

[1] We note that while petitioners must be afforded an opportunity to introduce alibi evidence at the habeas corpus proceeding, *Ross* v. *Hegstrom,* 157 Conn. 403, 254 A.2d 556 (1969), the heavy burden of conclusively establishing absence from the demanding state at the time of the crime is not met when there is merely contradictory evidence as to presence or absence. *Munsey* v. *Clough,* 196 U. S. 364, 375, 25 S. Ct. 282, 285, 49 L. Ed. 515, 518 (1905).

As the Court of Appeals recognized in *United States ex rel. Vitiello* v. *Flood, supra*:

"Just as in the use of hearsay, the method and means of obtaining the inculpatory remark may have a bearing on the weight which the court may give it in proceedings of this kind (citation omitted). Circumstances such as extreme duress or other highly improper inducements to compel a statement might render it worthy of no weight whatever * * *." *Id.* at 558

*Accord, Commonwealth* v. *Kulp,* 225 Pa. Super. 345, 348, 310 A.2d 399, 400 (1973). Since the involuntariness of petitioners' admissions may have the effect of rendering the statements worthy of little or no weight, petitioners must be afforded the opportunity to attempt to substantiate their claims of involuntariness. Clearly, this is particularly important where, as in the instant case, the sole evidence placing petitioners in the demanding state at the time of the crime was that provided by alleged confessions.

We recognize that where the admissions were allegedly made in the demanding state, the evidence may often be presented at the habeas hearing in the form of the sworn affidavit of the affiant to whom the petitioner allegedly confessed. In such cases it may be necessary for the petitioner to utilize methods other than cross-examination of the officer to attempt to prove that the confession was involuntary, since the unavailability of the affiant for cross-examination does not render the affidavit information inadmissible. *Smith* v. *State,* 89 Idaho 70, 403 P.2d 221 (1965). *See also United States ex rel, Vitiello* v. *Flood, supra.* However, where, as in the instant case, the confession was allegedly made to a law enforcement officer of the asylum state of Rhode Island, available as a witness, the petitioner must not be denied the opportunity to cross-examine the witness as to factors affecting the weight of the testimony.

Habeas corpus jurisdiction in this court is concurrent with that of the Superior Court, and our proceedings are de novo rather than by way of review of the Superior Court hearing. General Laws 1956 (1969 Reenactment) §10-9-3; *Lonardo* v. *Langlois*, 98 R.I. 493, 205 A.2d 19 (1964). However, as we have previously noted, this court is so set up as to be at a disadvantage, applicable to litigants as well as to us, whenever, as in the instant case, the taking of testimony is an integral part of the proceedings. *Id.* at 499, 205 A.2d at 23. *Accord, Ruggiero* v. *Langlois*, 100 R.I. 186, 211 A.2d 823 (1965). Thus, in such a situation, we remand the cause to the Superior Court for the necessary exercise of the fact-finding power. *Id.* at 193, 211 A.2d at 827.

The decision on this petition is reserved. The petition and papers are ordered transmitted to Superior Court, where the court shall conduct an evidentiary hearing in accordance with this opinion. The petitioners shall remain in the custody of the respondent warden to be held in accordance with law until such time as this court may render a decision based upon consideration of an evidentiary record adduced in the Superior Court in accordance with the decision. Jurisdiction is retained, and petition and papers are hereby ordered returned by the Superior Court to this court upon completion of the evidentiary hearing.

Mr. Justice Kelleher, dissenting. As a result of our holdings in *Salvail* v. *Sharkey*, 108 R.I. 63, 271 A.2d 814 (1970), and *Brown* v. *Sharkey*, 106 R.I. 714, 263 A.2d 104 (1970), there has evolved a certain set of basic principles which are applicable to all habeas corpus proceedings in which an alleged fugitive from justice contests the validity of his arrest by Rhode Island authorities who are acting at the request of the executive authority of another state. In essence, these principles are:

(1) When we sit to consider a petition for habeas corpus

filed by one who is charged as being a fugitive from justice, the court is not sitting as an appellate tribunal reviewing what transpired in the trial court: the hearing before us is de novo.

(2) The issuance of a rendition warrant, regular on its face, by the Governor of Rhode Island is prima facie evidence that the named accused is the fugutive wanted, and it is sufficient to justify his arrest, detention, and delivery to the demanding state.

(3) In order to rebut this prima facie evidence, the accused must prove beyond a reasonable doubt[1] that he was not in the demanding state at the time of the alleged offense or that he is not the person named in the writ, and proof of one or the other entitles him to his release.

(4) Interstate rendition proceedings are summary in nature, and the accused is not entitled to the full panoply of protection afforded a defendant in a criminal trial because the United States Constitution contemplates a prompt return of a fugitive to the state that demands his return.

(5) Constitutional claims and defenses are to be raised by fugitives upon their return to the demanding state and not before.

Applying these principles to the petition presently before us, I find a rendition warrant that is regular on its face. When the petition came before us for hearing, the petitioners, through their counsel, proceeded as if we were

---

[1]In *South Carolina* v. *Bailey,* 289 U. S. 412, 421-22, 53 S. Ct. 667, 671, 77 L. Ed. 1292, 1297 (1933), the Court first observed that the burden is upon the fugitive to show "by clear and satisfactory evidence that he was outside the limits of [the demanding state] at the time of the homicide," but then went on to add the following comment: "Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without [the demanding state] when the alleged offense was committed and, consequently, could not be a fugitive from her justice."

sitting in review of the actions taken by the trial justice at the hearing held in the Superior Court on the habeas petitions filed therein. At no time did petitioners, in their appearance before us, make any attempt, either by way of an affidavit or a request for the appointment of a master, to present evidence which might convince us that they were not in Shrewsbury, Massachusetts, on the evening of March 5, 1975, when a member of Shrewsbury's police department was murdered. Consequently, I would deny all three petitions on the basis that there has been a complete failure by petitioners to sustain their burden of proof.

While what transpired in the Superior Court is totally irrelevant to our consideration of the pending petitions, I will, because of the remand order issued by my Brothers, offer a brief comment on the trial justice's alleged undue restriction of the petitioners' cross-examination of Lieutenant Ricci.

My reading of the transcript indicates that petitioners constantly referred to the state's use of their statements with such phrases as having been "illegally obtained * * * in violation of their constitutional rights" or "unconstitutionally acquired." At another point petitioners also contended, "[I]t's for your Honor's consideration, both prior to and after hearing these statements, whether or not they were attained constitutionally, therefore should be excluded." When the trial justice ruled that he would not permit any inquiry related to whether the statements were the product of coercion, counsel for the male petitioners remarked that "this whole hearing becomes a nullity if we are to say that constitutional rights, just directed to this hearing, are not to be allowed * * *." The petitioners also took the position that the prosecution has a duty to present the "surrounding constitutionalities" of each statement. In noting an objection to a question asked

by Georgina Baker's counsel as to how long Lieutenant Ricci interrogated his client, the trial justice remarked that the inquiry appeared to be directed "to the constitutionality," and counsel responded, "Yes."

A cursory glance at the above quotations and colloquy makes it clear that in the Superior Court the petitioners were attempting to raise constitutional defenses which properly should and will be considered in the courts of Massachusetts. What the petitioners were attempting to do below was to convert the extradition hearing into a suppression hearing. This should be held in the demanding state. Therefore, the trial justice's refusal to permit cross-examination was correct.

The foregoing reasons necessitate this dissent.

*Paul J. DiMaio, Harris L. Berson,* for petitioner.

*Julius C. Michaelson,* Attorney General, *Nancy Marks Rahmes,* Special Asst. Attorney General, for respondent.